IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
KELVIN MITCHELL,            )
                            )
        Plaintiff,          )
                            )     CIVIL ACTION NO.
        v.                  )     2:20cv252-MHT
                            )          (WO)
TOWN OF HAYNEVILLE,         )
ALABAMA, et al.,            )
                            )
        Defendants.         )
```

OPINION AND ORDER

Plaintiff Kelvin Mitchell is the chief of police for
the Town of Hayneville, Alabama, a position he has held
more-or-less consistently since 2004.  This suit concerns
the more-or-less.

Mitchell alleges that he backed the wrong horse in a
town council election and that the council summarily
fired him in retaliation when it finally was able to
convene a post-election quorum two years later.  He was
out of the job for about two and a half months; he then
returned to administrative leave with pay and later
resumed work as the police chief.  He now names as

defendants the Town of Hayneville, three current council members in their individual capacities only, and a former council member in both her official and individual capacities. He asserts six claims: violations of (1) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; (2) the continued-coverage notice provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1166; (3 & 4) his Fourteenth Amendment rights, as enforced through 42 U.S.C. § 1983, to procedural due process and to be free of retaliation for political activity protected by the First Amendment; and (5 & 6) state-law guarantees of his contract rights and protection from wrongful termination. All six of Mitchell's claims are brought against the Town of Hayneville, and he brings his due-process and First Amendment claims against the four individual defendants as well.

The court has jurisdiction to hear his FLSA, ERISA, due-process, and First Amendment claims under 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (FLSA), 29 U.S.C. § 1132(e) (ERISA), and 28 U.S.C. 1343 (civil

2

rights), and his state-law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

The case is now before the court on defendants' motion to dismiss Mitchell's ERISA, due-process, and state-law claims.  They also include in their motion the First Amendment claim to the extent it is brought against former council member Cynthia McDonald in her official capacity.  For the reasons that follow, the court will grant in part and deny in part defendants' motion. Mitchell's ERISA claim will be dismissed, as he concedes it should be, because that statute's notice requirements do not apply to government entities; however, he will be permitted to amend his complaint to state a similar claim under the applicable Public Health Services Act (PHSA) instead, 42 U.S.C. § 300bb-6.  His due-process claims against the defendant councilmembers in their individual capacities are barred by qualified immunity, but his claim against the town may proceed.  His claims against McDonald in her official capacity will be dismissed. His state-law claims are properly pleaded and may proceed.

3

(Also, because they are not challenged in the motion to dismiss, Mitchell's FLSA claim and his First Amendment claim will proceed, except to the extent that he brings the First Amendment claim against McDonald in her official capacity.)

## I.  MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  The court may draw "reasonable inferences" from the facts alleged in the complaint.  *Chesser v. Sparks*, 248 F.3d 11117, 1121 (11th Cir. 2001).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl.*

**4**

*Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*


## II.  BACKGROUND

The details of the contested election that preceded Mitchell's firing are set forth at length in his complaint, but only a few are relevant to his claims.  In August 2016, the Town of Hayneville, Alabama, held its quadrennial municipal election.  Mitchell supported an unsuccessful candidate for town council.  This election became the subject of great controversy and voluminous litigation, ultimately producing a decision from the Supreme Court of Alabama.  *See Ex parte Scrushy*, 262 So. 3d 638 (Ala. 2018).  On April 18, 2018, shortly after the election disputes were resolved in the courts, the council met and voted to remove Mitchell from his once and future position as police chief.

Mitchell was at the April meeting, but the facts alleged in the complaint indicate that he did not have prior notice of reasons why the council might seek to remove him from his post nor any opportunity to present his side of the story at that time.  In early July, the council met again and voted to reinstate Mitchell to his position, but to place him on administrative leave with pay.  While he was out of the job between April and July, Mitchell continued to receive a paycheck because he was being paid out his accrued leave time.  His health-care coverage ended on July 1; based on the fact that he was returned to administrative leave with pay on July 2, the court infers that his coverage resumed that day.

In November 2018, Mitchell received a letter with notice of the reasons why the council was considering terminating him, and he was given the opportunity to request a hearing on the charges.  He did so, and the hearing was held on December 3, 2018, with Mitchell and his attorney present.  After hearing Mitchell's evidence, the council met again on December 10 to decide whether

to terminate him, but the vote split 2-2.   Mitchell
resumed his duties as police chief the following week and
has remained in the job since then.


### III. DISCUSSION

A threshold matter in resolving the claims that are
the subject of the present motion is determining exactly
what remedies Mitchell seeks.[1]   This turns out to be a
complicated and hotly disputed question with consequences
for nearly all counts of his complaint.   He can't be
suing for his job because he continues to be the town's
police chief, but he could be suing for his job security
because he claims he was never formally reappointed to
the position, which carries certain tenure protections
under Alabama law.   He can't sue for back pay because he
continued to receive a paycheck through his return to the

_____

1. Although Mitchell specifies certain remedies, he
also requests "such further relief as the Court may
award" for all of his claims, as well as "such other and
further relief as is just and proper" for his suit as a
whole.   Amended Complaint (doc. no. 8) at 16-23.

job in July 2018, but he could sue for the accrued leave time he expended to get that continued salary.

He also can't sue for compensatory damages for the loss of his income or health insurance because, again, he continued to receive a paycheck throughout the relevant time period and his health-care coverage ended only a day before it resumed again. *See Carey v. Piphus*, 435 U.S. 247, 254 (1978) ("Rights, constitutional and otherwise, do not exist in a vacuum.  Their purpose is to protect persons from actual injuries to particular interests....").  If his procedural-due-process claim against the individual-capacity defendants were not barred by qualified immunity, he could sue for nominal damages, *see id.* at 266-67, or for punitive damages if he showed that the council members who terminated him had "evil motive or intent," or demonstrated "reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56 (1983).  But as explained below, qualified immunity does bar this claim, so he cannot pursue damages on that count.

**8**

Punitive damages also are not available against the town itself. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Ultimately, the court concludes that equitable remedies--such as injunctive or declaratory relief--are for the most part all that may be available to Mitchell on the claims that are the subject of the present motion to dismiss.

### a.  ERISA Claim

Mitchell brings suit against Hayneville under the provisions of ERISA enumerating employees' rights to continuing health-care coverage for a period of time after certain "qualifying event[s]," including termination.[2]   29 U.S.C. § 1161.   In particular, he

---

2.  Mitchell frames his ERISA claim as a claim under the Consolidated Omnibus Budget Reconciliation Act (COBRA), which amended both ERISA and the Public Health Services Act in similar ways and added the ERISA provision under which he brings suit. *See Brett v. Jefferson Cty.*, 123 F.3d 1429, 1434-45 (11th Cir. 1997). The court refers to this claim as arising under ERISA to distinguish it from a potential claim under the PHSA.

alleges that the town failed to notify him of his right to continued coverage in violation of 29 U.S.C. § 1166. As he now acknowledges, this claim cannot proceed under ERISA. *See* Response to Motion to Dismiss (doc. no. 28) at 9. The provisions he alleges were violated do not apply to "governmental plan[s]," 29 U.S.C. § 1003(b)(1), which include plans maintained by state subdivisions, 29 U.S.C § 1002(32).

Although his ERISA claim is barred, Mitchell asks for the opportunity to amend his complaint to state a clam instead under the the Public Health Services Act (PHSA), which does apply to government health plans and which contains substantively identical notice provisions to ERISA. *See* 42 U.S.C. § 300bb-6; *see also Bigelow v. United Healthcare of Miss., Inc.*, 220 F.3d 339, 344-45 (5th Cir. 2000) (noting similarity between ERISA and PHSA provisions). Other courts in similar circumstances have simply construed ERISA claims as claims under the PHSA because of the parallels between the statutes. *See Bigelow*, 220 F.3d at 344. But there is an additional

10

problem with Mitchell's complaint: He purports to seek only damages and fees on this claim, *see* Amended Complaint (doc. no. 8) at 20, but the PHSA authorizes only equitable relief as a remedy against state actors who violate its provisions, *see* 42 U.S.C. § 300bb-7. The Eleventh Circuit has held that the PHSA does not authorize even attorneys' fees incidental to equitable relief. *See Brett v. Jefferson Cty.*, 123 F.3d 1429, 1435 (11th Cir. 1997).

It is unclear from the facts alleged in the present complaint what equitable relief Mitchell might seek for the claimed violation of the PHSA. For this reason, the court will dismiss Mitchell's ERISA claim but grant him leave to amend the complaint, if he so chooses, to state a claim under the PHSA. This leave to amend comes with the proviso that whatever relief he may seek under the PHSA cannot include either damages or fees, the only relief he currently requests. If he chooses to amend, he should state clearly what equitable relief he requests for the PHSA violations he alleges.

b.   Procedural Due Process

As stated, Mitchell asserts a due-process claim against Hayneville and the four individual defendants, suing three in their individual capacities only and one (McDonald) in both her individual and official capacities.   The four individual defendants argue that qualified immunity bars Mitchell's § 1983 claims against them in their individual capacities for the procedural-due-process violation he alleges.   *See* Br. in Supp. Defs.' Motion to Dismiss (doc. no. 17) at 8-9. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).   Determining whether this immunity applies involves two distinct inquiries, which the court may resolve in either order:   whether the plaintiff's

12

allegations "make out a violation of a constitutional right," and whether "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Iqbal*, 556 U.S. at 685 (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)). Consequently, it is appropriate for the district court to resolve qualified-immunity issues on the pleadings, before allowing discovery. *See Pearson*, 555 U.S. at 231-32. Qualified immunity protects officials sued for money damages in their individual capacities; it "does not shield against equitable claims." *Burrell v. Bd. of Trustees of Ga. Mil. Coll.*, 970 F.2d 785, 788 (11th Cir. 1992).

In this case, the court will proceed to determine whether a constitutional violation occurred before

deciding whether the right at issue was clearly established.  There would be no benefit of judicial economy to postponing the constitutional question because defendants have also moved to dismiss Mitchell's due-process claim against the town, and the town cannot raise qualified immunity as a defense.  *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *see also Pearson*, 555 U.S. at 236-37 (authorizing courts to decide the question of a right's clear establishment first to avoid "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case").

### 1.  Whether a Violation Occurred

The procedural-due-process question concerns Mitchell's removal from his post at the April 2018 council meeting.[3]  If he was a tenured public employee at

---

3.  Mitchell also claims that he suffered constitutional injury because of the July meeting at which he was returned to administrative leave with pay

14

the time of the meeting, the decision of the United States
Supreme Court in *Cleveland Board of Education v.
Loudermill*, 470 U.S. 532 (1985), has long described the
process due before he could be terminated: "The tenured
public employee is entitled to oral or written notice of
the charges against him, an explanation of the employer's
evidence, and an opportunity to present his side of the
story." *Id.* at 546.

The allegations in Mitchell's complaint indicate
that he did not receive this process before he was removed
from his job in April 2018.  Defendants argue that what
process Mitchell received is irrelevant because he
(1) was an at-will rather than tenured employee by the
time of that meeting and therefore had no property
interest in his continued employment; (2) was not

_____

and the December meeting at which he was returned fully
to his position.  The court does not see how it violates
due process to reinstate someone's employment.  As such,
the court will focus on the April 2018 meeting and will
consider the later meetings simply as times when Mitchell
alleges the council failed to redress fully the claimed
violation from the April meeting.

deprived of any property interest because he lost only his accrued paid leave; and (3) cannot sue for a procedural-due-process violation in any case because an adequate post-deprivation remedy is available to him under state law.  The court finds each of these arguments unavailing.

Mitchell remained a tenured public employee when he was removed from his position in April 2018.  As police chief, he was an appointed official of the town.  *See* Amended Complaint (doc. no. 8) at ¶¶ 15-16.  Town councils may remove an appointed official only for good cause, such as "incompetency, malfeasance, misfeasance, or nonfeasance in office and for conduct detrimental to good order or discipline."   Ala. Code § 11-43-160(a)(2). Law-enforcement officers, including police chiefs, are also specifically entitled to a hearing before being suspended or terminated.  *See* Ala. Code §§ 11-43-230 to -231.

Prior to the April 2018 meeting, Mitchell had last been appointed by the council in 2012 to a four-year

term, co-extensive with the terms of the councilmembers and mayor. *See* Br. in Supp. Motion to Dismiss (doc. no. 17) at 4; *see also* Ala. Code § 11-43-46 (providing that the terms of appointed officers may not exceed that of the mayor). Defendants say that because Mitchell was appointed to a four-year term, his protected position expired in 2016, and he therefore no longer held tenure-protected public employment when the council met in 2018 to relieve him of his duties. In support, they cite an opinion of the Office of the Alabama Attorney General explaining that a police chief's term of office "ends generally by operation of general law when a newly elected council takes office," which means that "these persons must be reappointed at the beginning of each organizational meeting of a new council or as soon as practicable thereafter." *Municipalities - City Clerks - City Treasurer*, No. 2013-020, Ala. Op. Att'y Gen., 2013 WL 226995, at *3 (Jan. 9, 2013). As such, they argue that the council simply decided not to

17

reappoint Mitchell at the April 2018 meeting, a decision which would implicate no due-process protections.

This argument misses the issue, albeit narrowly. The opinion cited by defendants addressed the general length of police chiefs' terms and whether it is necessary for them to be reappointed--that is, whether a police chief can simply be presumed to have obtained another four-year term if the council does nothing one way or another after reconvening. *See id.* at *1 (listing the questions answered by the opinion). It states that, in order to obtain an additional four-year term, a police chief or other town official must be reappointed after the council reconvenes. *See id.* at *3.

The issue in this case is different: It is whether Mitchell continued to have any tenure protections at all once the new council took office. In other words, the question here is whether Mitchell's term was ended automatically by the reconvening of the council, or whether something more was necessary to cut off his tenure protection.

18

The attorney general's opinion cited by defendants does not answer that question--it holds that Mitchell was not automatically entitled to another four-year term, but it does not address whether he otherwise retained his employment protections in April 2018.  But § 11-43-4 of the Code of Alabama and opinions interpreting that provision do address the latter question.  Under Alabama law, for towns and cities with a population of less than 6,000 people,[4] "[t]he clerk and such other officers elected by the council shall serve until their successor or successors are elected and qualified."  Ala. Code § 11-43-4.  As the Office of the Attorney General has explained, under § 11-43-4 a town officer whose term has elapsed generally becomes a "hold over" official until his or her successor is appointed.  *See City of Foley - Municipalities - Elections*, No. 1981-119, Ala. Op. Att'y Gen., 1990 WL 10711756, at *2 (Sept. 23, 1990).  This position is held as a matter of right; there is

---

4.   The town of Hayneville has a population of approximately 1,000.

19

presumed to be a "right of the incumbent to hold over," which attaches to the officeholder "unless such holding over be expressly or impliedly prohibited." *Id.* Nothing in the pleadings or defendants' motion to dismiss indicates that the ordinances or policies of Hayneville prohibited town officers from performing as hold-over officials. For this reason, Mitchell had a right under state law to retain his position until his successor was chosen, absent good cause to fire him.

Although there is little case law on point, what exists supports this reading of the relevant statutes. This includes *Allred v. City of Carbon Hill*, No. 6:13-cv-00930-LSC, 2014 WL 5426822 (N.D. Ala. Oct. 24, 2014) (Coogler, J.), the case on which defendants principally rely. In *Allred*, the court found that a police chief's term in office had ended because his successor had been appointed. *See* 2014 WL 5426822, at *1 (noting that the council had appointed a new police chief); *see also id.* at *4 ("[T]he council's election of a new police chief effectively ended the term of the

20

plaintiff's service as police chief." (quoting *In re Potter*, 354 B.R. 301, 307 (Bankr. N.D. Ala. 2006))).  The complaint does not state that the council chose Mitchell's successor when it voted to relieve him of his office.  As such, based on the facts pleaded in the complaint, he was still a tenured public employee when the council terminated him in April 2018.

To seek relief for a due-process violation, Mitchell also must plausibly allege that he was deprived of a property interest.  *See Loudermill*, 470 U.S. at 538.  If he were suing for the loss of his job, this would be straightforward: Under Alabama law, as discussed above, Mitchell plainly had a property interest in his employment for the duration of his legally protected tenure in the position.  But defendants argue that, because Mitchell already has his job back and is suing instead for the return of his paid leave benefits, there is no property deprivation here for which he can seek relief.

In support, defendants cite the opinion of another judge of this court in *Ingalls v. U.S. Space and Rocket Center*, No. 2:14-cv-699-WKW, 2015 WL 4528687 (M.D. Ala. July 27, 2015) (Watkins, C.J.).  The *Ingalls* court noted that a number of the federal courts of appeals "have excluded from the Due Process Clause's reach a public employer's denials of accrued sick leave, pension benefits, accrued time off, and promotion rights."  *Id.* at *13 (citing *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988)).  Because of this, defendants say that Mitchell's suit to recover his lost leave time cannot be founded on the Due Process Clause.  *See* Br. in Supp. Motion to Dismiss (doc. no. 17) at 5.

*Ingalls* is off-point.  The town council of Hayneville did not deny Mitchell his accrued time off at the April 2018 meeting; it fired him.  Defendants confuse the scope of Mitchell's potential relief for the scope of the property interest at issue.  While Mitchell does not have a claim for compensatory damages because his income never ceased, he still had a property interest in remaining in

22

his position through the end of his tenure absent a finding of good cause for termination preceded by due process of law.

If the need for compensation defined the limits of actionable procedural-due-process rights, nominal damages would never be an appropriate remedy in such cases. The Supreme Court has expressly rejected that position. *See Carey*, 435 U.S. at 266 ("[D]enial of procedural due process should be actionable for nominal damages without proof of actual injury."). Relieving Mitchell of his tenured job without process may have deprived him of only a nominal property interest, but it was a property interest nonetheless.

Finally, defendants argue that Mitchell's suit is barred by *Parratt v. Taylor*, 451 U.S. 527 (1981), and its progeny. The United States Supreme Court held in *Parratt* that where there is "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process," due process is satisfied if the state provides an adequate opportunity

23

to remedy the harm after the deprivation occurs. *Parratt*, 451 U.S. at 539; *accord McKinney v. Pate*, 20 F.3d 1550, 1562-63 (11th Cir. 1994).

Based on the allegations of the complaint, *Parratt* and *McKinney* do not apply to Mitchell's claim. A prerequisite to their application is that a pre-deprivation hearing was "impracticable." *McKinney*, 20 F.3d at 1562. This may be true when the deprivation is caused by the "random and unauthorized act" of a state official, as in *Parratt*. 451 U.S. at 541. Or it may be true when the plaintiff notionally received a pre-deprivation hearing, but the hearing took place before such a biased decisionmaker that the plaintiff cannot be said to have had the possibility of genuine due process, as in *McKinney*. *See* 20 F.3d at 1562-63.

By contrast, Mitchell claims that he received no pre-deprivation process at all under circumstances in which such process was feasible. The facts alleged here do not show any reason to think it would have been impossible for the council to provide him a hearing

**24**

before voting to terminate him in April 2018.  Nor do
Mitchell's allegations of bias suggest that a
pre-deprivation hearing would have been "impracticable";
when the ostensibly biased council finally held a hearing
on his employment in December 2018, it voted not to
terminate him.  In the absence of any showing that the
council could not have provided Mitchell pre-deprivation
process, his claim comes under the general rule that
there is no requirement for a litigant to pursue
state-law remedies before bringing suit under § 1983.
*See Monroe v. Pape*, 365 U.S. 167, 183 (1961).


### 2.  The Individual Defendants

The four individual defendants assert that qualified
immunity bars Mitchell's due-process claim against them
in their individual capacities.  As discussed above, the
qualified immunity inquiry involves two separate
questions: whether the allegations "make out a violation
of a constitutional right," and whether "the right at
issue was 'clearly established' at the time of the

25

defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier*, 533 U.S. at 201). The former question was difficult; the latter is concomitantly not.

Whether Mitchell's due-process rights in this case were clearly established at the time of his April 2018 termination can be resolved simply on the issue of his status as a "hold over" official. Determining that he was holding over in his job and that he therefore had a right to remain in the position until his successor was chosen required the resolution of an arguable question of state law for which the best authorities were opinions of the Office of the Alabama Attorney General, none of which squarely controlled this case. It was not unreasonable for the councilmembers to believe in April 2018 that Mitchell's term in office had ended and that he therefore had no procedural-due-process right to a hearing before they terminated him.

As such, Mitchell's claims against the councilmembers for damages for violating his

procedural-due-process rights are barred by qualified immunity and must be dismissed.

### 3.  Hayneville

As stated, Hayneville cannot assert qualified immunity from Mitchell's due-process claim.  And, as explained above, Mitchell has asserted a viable claim, and thus this claim will proceed against the town.

### c.  State Law Claims

Finally, Hayneville, which is the only defendant sued on the state-law claims, moves to dismiss claims for breach of contract and wrongful termination.  The town argues that Mitchell's claims are barred because (1) he did not file a notice of claim prior to bringing suit; (2) he does not allege facts sufficient to state a breach-of-contract claim; (3) there exists no tort of wrongful termination under Alabama law, or, if such a tort does exist, the town is immune; and (4) the statute setting forth the requirements for a pre-disciplinary

hearing for law-enforcement officers does not create a private right of action for damages. None of these arguments provide a reason to dismiss either of his state-law claims.

### 1. Notice of Claim

Hayneville offers two Alabama statutes that might bar Mitchell's suit for failure to file a notice of claim. The first of these, Alabama Code § 11-47-192, by its terms applies only to claims for personal injury. *See* Ala. Code § 11-47-192 ("No recovery shall be had against any city or town on a claim for personal injury received" absent prior filing of a statement with the town clerk). Mitchell brings no such claim here.

The second, Alabama Code § 11-47-23, presents a closer call. Part of the statute declares that claims for damages "growing out of torts shall be presented within six months from the accrual thereof or shall be barred." Ala. Code § 11-47-23. As a preliminary matter, this six-month provision--though it is the focus of the

town's briefing on this issue--does not apply to Mitchell's claim for breach of contract. It is also largely inapposite to his wrongful-termination claim. As discussed previously, the gravamen of Mitchell's complaint is for equitable relief. Compensatory damages will not be available, and he does not seek punitive damages on this claim. To the extent that he may seek nominal damages from the town for his wrongful-termination claim, the six-month provision of Alabama Code § 11-47-23 could bar that relief. Otherwise, it has no bearing here.

Alabama Code § 11-47-23 also indicates that all claims against municipalities other than claims for damages "shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred." *Id.* This provision applies to both of his state-law claims, so while Mitchell filed his complaint within two years of their accrual, they may be barred if he was required to present them to the clerk prior to filing suit and failed to do so.

He was not so required.  The Supreme Court of Alabama has held and reiterated that "[f]iling a lawsuit operates as a notice of claim" satisfying the requirements of § 11-47-23.  *Lee v. Houser*, 148 So. 3d 406, 420 (Ala. 2013); *see also Marvin W. Sumlin Constr. Co. v. City of Prichard*, 465 So. 2d 371, 373 (Ala. 1985) ("The filing of a complaint has long been held sufficient claim for payment to satisfy the nonclaim provisions of § 11-47-23.").  None of the cases the town cites contradict this longstanding rule; indeed, some of them affirm it.  *See, e.g.*, *Frazier v. City of Mobile*, 577 So. 2d 439, 440 (Ala. 1991) (noting that filing an action within the time limits established by § 11-47-23 is "sufficient presentment of the claim to comply with that provision").  Although this rule emerges from cases applying the six-month limit on claims for damages under § 11-47-23, the statute does not distinguish the presentment required in such cases from that required for non-damages claims, other than its allowance of six months for one and two years for the other.  Mitchell's

30

state-law claims are not barred for failure to present notice prior to filing suit because under Alabama law, his suit operated as notice.

## 2. Breach of Contract

Mitchell claims that the town breached his employment contract by failing to follow "policies and procedures for progressive discipline and termination of employees" set forth in his employee handbook. Amended Complaint (doc. no. 8) at ¶¶ 139, 141. Under Alabama law, a breach-of-contract claim requires the plaintiff to show "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001). Notwithstanding the requirement to show damages, the Alabama Supreme Court has held that "an action based on a breach of contract will lie even where the plaintiff has suffered no actual damage," in which instance the

31

plaintiff "is entitled to at least nominal damages." *RLI Ins. Co. v. MLK Ave. Redevelopment Corp.*, 925 So. 2d 914, 918 (Ala. 2005) (quoting *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1120 (Ala. 2003)).

Alabama courts have recognized that the terms of an employee handbook can create a binding employment contract under certain circumstances: when the language of the handbook is "specific enough to constitute an offer," the offer has been "communicated to the employee by issuance of the handbook, or otherwise," and the employee has "accepted the offer by retaining employment after he has become generally aware of the offer." *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 735 (Ala. 1987). The town argues that Mitchell's breach-of-contract claim cannot proceed because he provides insufficient details of the employee handbook and the town's policies governing discipline and discharge to allege that his contract was binding.

The dispute over the employee handbook is misplaced. The cases cited by the parties rest on the default

presumption that employment relationships in Alabama are at-will; these cases explain how the terms of an employee handbook can rebut that presumption, making a contract of employment binding on the parties in spite of the general rule that "an employee contract at will may be terminated by either party with or without cause or justification." *Id.* at 728. But the relationship here was not one of at-will employment; Mitchell was a tenure-protected public employee when he was fired. As a result, these cases are inapposite, and Mitchell has plausibly pleaded that a binding contract existed here--indeed, state law ensures that whatever employment agreement existed between the parties bound the town to retain Mitchell absent certain pre-termination process. *See* Ala. Code § 11-43-230. The complaint also states that he performed his duties as police chief and that the town, by firing him without process, failed to perform its side of the bargain. *See* Amended Complaint (doc. no. 8) at ¶¶ 139, 141 (stating that the handbook "set[] forth policies and procedures for progressive discipline and

termination of employees" and that the town "did not
follow" these procedures).   Moreover, as explained
earlier, the fact that Mitchell is ineligible for
compensatory damages does not defeat his claim.   *See RLI
Ins. Co.*, 925 So. 2d at 918.   Accordingly, his
breach-of-contract claim may proceed.


### 3.   Wrongful Termination

Hayneville argues that the wrongful-termination
claim must be dismissed because no tort of wrongful
termination exists under state law.   But Alabama courts
do allow suits for wrongful termination by public
employees fired from tenure-protected positions.   *See Ex
parte Hugine*, 256 So. 3d 30, 56 (Ala. 2017) ("[O]ur courts
have stated that '[t]he dismissal of a public employee
who is entitled to a pretermination hearing, without such
a hearing, is a wrongful act constituting a tort under
Alabama law.'" (quoting *Hardric v. City of Stevenson*, 843
So. 2d 206, 210 (Ala. Civ. App. 2002))); *see also
Galbreath v. Hale Cty.*, 754 F. App'x 820, 828-29 (11th

Cir. 2018) (acknowledging that a tort of wrongful termination exists in Alabama for public employees). The town's argument on this point supplies no reason to dismiss Mitchell's claim for wrongful termination.

Hayneville further argues that the town is immune from suit for wrongful termination because of Alabama Code § 11-47-190, which protects municipalities from liability for damages except those caused by "the neglect, carelessness, or unskillfulness" of a town employee. In general, this means that "a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts." *Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010). The Supreme Court of Alabama has held, however, that when a nominally intentional tort is based on "a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness,'" § 11-47-190 does not immunize a municipality from suit. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003) (quoting *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995)); *see*

35

*also Brown*, 608 F.3d at 743 (recognizing this exception to § 11-47-190).

It is not wholly clear from Mitchell's complaint whether the facts he alleges show deliberate wrongful termination or carelessness by the councilmembers as to whether Mitchell remained entitled to the tenure protections afforded by state law.  Ultimately, the court need not resolve the matter.  As discussed previously, compensatory damages are not available in this case. Mitchell does not seek punitive damages against the town on his wrongful-termination claim.  *See* Amended Complaint (doc. no. 8) at 22.  And to the extent that he seeks equitable remedies, § 11-47-190 presents no obstacle. *See* Ala. Code § 11-47-190 (precluding certain kinds of vicarious municipal liability "for damages").


## 4.  Private Right of Action

The town finally argues that Alabama Code § 11-43-230, which describes the pre-disciplinary process afforded to municipal law-enforcement officers,

does not create a private right of action for damages.
It is unclear from the town's briefing whether it means
this argument to undercut Mitchell's due-process claim
or his wrongful-termination claim.  *Compare* Br. in Supp.
Motion to Dismiss (doc. no. 17) at 15 (referring to count
II of the complaint, the procedural-due-process claim),
*with id.* ("Accordingly, the Plaintiffs' [sic] 'wrongful
termination' state law claim is due to be dismissed.").
This confusion points to a basic problem with the town's
argument: Mitchell does not bring a claim under Alabama
Code § 11-43-230.

        To be sure, that statute is relevant to determining
whether Mitchell was wrongfully terminated under Alabama
tort law and whether his federal due-process rights were
violated.  But no count of his complaint is brought
directly under § 11-43-230 for a statutory violation by
the town or its officials.  Because Mitchell does not sue
under § 11-43-230, resolving the existence or scope of
any private right of action that statute may create would
be an academic exercise here.  Article III does not

empower this court to engage in such.  *See Chafin v.
Chafin*, 568 U.S. 165, 172 (2013).


        d.  Claims Against Cynthia McDonald

Mitchell brings his procedural-due-process and First
Amendment claims against McDonald, a former member of the
town council, in her official and individual capacities.
Official-capacity claims are used to seek equitable
relief against current government officials.  This
typically takes the form of a court order compelling the
official to do something or refrain from doing something
in their capacity as a government actor.  Although
Mitchell sues McDonald in her official capacity "as a
member of the town council," he concedes that she is no
longer a member of the council.  *See* Response to Motion
to Dismiss (doc. no. 28) at 22.  Thus, these claims must
be dismissed because of the unavailability of any
possible remedy.  The court cannot enjoin McDonald to do
anything or refrain from doing anything in her official
capacity as a member of the town council because she is

not a member of the town council. Moreover, Mitchell's official capacity claims against her are redundant with his claims against the town.

The court believes that Mitchell may be confusing official-capacity suits for equitable relief with individual-capacity suits for damages, in light of the statement in his response brief that McDonald "is no longer a member of the Hayneville Town Council, so the only way to hold her responsible for actions that she took as a member of the Hayneville Town Council is to sue her in her official capacity." *Id.* Regardless, under the circumstances of this case, there is no reason to grant Mitchell leave to substitute one of the current councilmembers as an official-capacity defendant to replace McDonald. Mitchell names the town as a defendant on both of his constitutional claims; bringing those same counts against an official-capacity defendant would be redundant with his claims against the town and could provide him no additional relief.

39

For the reasons discussed above, Mitchell's due-process claim against McDonald in her individual capacity also is barred by qualified immunity. However, his First Amendment claim against McDonald in her individual capacity is not contested by the present motion and may proceed.

## IV. CONCLUSION

For the reasons set forth in this opinion, the court will grant in part and deny in part defendants' motion to dismiss. Mitchell's ERISA claim is barred, but he may amend his complaint to state instead a claim under the PHSA if he believes that any equitable relief would be appropriate for the alleged violation of that statute. Qualified immunity bars his § 1983 suits for damages against the four individual councilmembers for violating his procedural-due-process rights. He cannot bring his due-process and First Amendment claims against McDonald in her official capacity as she is no longer a councilmember. His complaint proceeds now on his First

Amendment claim against the town and all individual defendants in their individual capacities only, and on his FLSA, due-process, breach-of-contract, and wrongful-termination claims against the town.

* * *

Accordingly, it is ORDERED that:

(1) Defendants' motion for partial dismissal (doc. no. 16) is granted in part and denied in part.

(2) Plaintiff Kelvin Mitchell's due-process claim (Count II) against defendants Lula Tyson-Bailey, Justin Pouncey, and Sharon Reeves in their individual capacities is dismissed with prejudice.

(3) Plaintiff Mitchell's due-process and First Amendment retaliation claims (Counts II & III) against defendant Cynthia McDonald in her official capacity, as well as his due-process claim against defendant McDonald in her individual capacity, are dismissed with prejudice.

41

(4) Plaintiff Mitchell's claim against defendant Town of Hayneville for violation of the COBRA provisions of ERISA (Count IV) is dismissed.  Plaintiff Mitchell may amend his complaint to restate this claim under the PHSA if he so chooses, bearing in mind that the PHSA does not authorize relief in the form of damages or fees.

(5) The deadline for plaintiff Mitchell to file an amended complaint is 5:00 p.m. on January 8, 2021. Plaintiff Mitchell may amend his complaint by that date as described above.

(6) Plaintiff Mitchell's suit now proceeds on Count I (FLSA) against defendant Town of Hayneville; Count II (due-process) against defendant Town of Hayneville; Count III (First Amendment) against defendant Town of Hayneville and all four of the individual defendants (Tyson-Bailey, Pouncey, Reeves, and McDonald) in their individual capacities; and Counts V and VI (state-law claims) against defendant Town of Hayneville.

DONE, this the 18th day of December, 2020.

       /s/ Myron H. Thompson
       UNITED STATES DISTRICT JUDGE