IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| KELVIN MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:20cv252-MHT |
| | ) | (WO) |
| TOWN OF HAYNEVILLE, | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Kelvin Mitchell is the current chief of
police for the Town of Hayneville, Alabama.  He names as
defendants the town and the following four councilmembers
in their individual capacities: Justin Pouncey, Lula
Tyson-Bailey, Sharon Reeves, and Cynthia McDonald.   He
asserts the following federal claims against the town:
that it (1) denied him overtime in violation of the Fair
Labor Standards Act (FLSA), 29 U.S.C. § 201; (2) denied
him 'procedural' due process in violation of the
Fourteenth Amendment, as enforced through 42 U.S.C.
§ 1983; (3) and retaliated against him, in violation of

the First Amendment, as enforced through § 1983.  He also asserts two state claims (4 and 5) that the town removed him from office in violation of Alabama's laws guaranteeing his right to contract and protection from wrongful termination.  He asserts his First Amendment retaliation claim against the four councilmembers as well.

The court has jurisdiction over Chief Mitchell's three federal claims under 28 U.S.C. § 1331 (federal question), 29 U.S.C § 216(b) (FLSA), and 28 U.S.C. § 1343 (civil rights), and his two state claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

This case is now before the court on the defendants' motion for summary judgment.  For the reasons explained below, the motion will be granted in part and denied in part.

## I.   Summary-Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... its case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... its case at trial.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)).  In making its determination as to whether summary judgment is appropriate, the court must view all evidence and any reasonable factual inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).


## II.  Factual Background

Hayneville is a small town, having a population of approximately 1,000.  Four of its residents serve as law enforcement officers for its police department.  One of those officers is Mitchell, who currently serves, and has

served for nearly 18 years, as the town's chief of police. But those 18 years of service have not gone uninterrupted.   In 2018, Mitchell was fired from his post.   He was then re-hired and put on administrative leave before ultimately being reinstated as chief eight months later.   This case concerns that interruption in his tenure.

Mitchell alleges he was terminated in 2018 because he supported the wrong, that is, losing, candidate during Hayneville's heavily contested 2016 municipal election. The 2016 election was so heavily contested, in fact, that suits were filed, and a clear victor did not emerge until the spring of 2018.   On April 18, 2018, shortly after the dust from the election had settled, the new council unanimously voted to remove Mitchell from his once and future position as chief of police.   The four councilmembers who voted for Mitchell's termination--defendants Justin Pouncey, Lula Tyson-Bailey, Sharon Reeves, and Cynthia McDonald--were candidates whom Mitchell opposed in the election.

These four defendants testified that they voted to remove Mitchell as chief either because they were receiving verbal complaints about him from the community or because they personally believed he was performing poorly.  The councilmembers also testified that they were not aware of whom Mitchell politically supported during the 2016 election and that political affiliation was not a relevant consideration for chief of police.

Nonetheless, Mitchell asserts that the councilmembers were aware of his political affiliation, and fired him because of that affiliation, for four reasons.  First, Hayneville is a small town where everybody knows everything about everybody. Second, Mitchell was open about whom he supported (for example, he door-knocked for his preferred candidate).  Third, he had a conversation with defendant Reeves's husband, in the presence of Reeves.  During that conversation, Reeves's husband told Mitchell that Reeves, Tyson-Bailey, and McDonald had a plan to get rid of town officials, including Mitchell, if they were not on the right

political side.   During that conversation, Reeves agreed that she and the others had such a plan and said, "Yeah. [That] is what we're going to do."   Deposition of Kelvin Mitchell (Doc. 52-2) at 52.   And, fourth, Mitchell directly told Tyson-Bailey whom he politically supported in the election.

The council voted to remove Mitchell as chief on April 18, 2018.   It is undisputed that, prior to this vote, he was not given a pre-disciplinary hearing; nor had he been provided any notice of the grounds for his termination.   Mitchell, who was present at the vote, asked the councilmembers to explain why he was being terminated.   But the councilmembers declined to answer, opting instead to tell him that they would provide him with the grounds for his termination during the next council meeting.

The next council meeting came, and Mitchell was faced with the same situation:   The council refused to give him a reason for his termination.   At the meeting, the mayor stated that he was opposed to Mitchell's termination and

that he believed the council terminated Mitchell without due process. Mitchell himself said the same and that he intended to file a federal lawsuit. Several citizens spoke on Mitchell's behalf. Eventually there was an uproar, and three of the defendant councilmembers walked out of the meeting. One of those walkouts, Reeves, then gave an interview with a local news channel and explained that Mitchell had been terminated because he had a history of failing to respond to 911 calls.

Fast-forward a month, and the council held another meeting. At that meeting, the council appointed an acting chief of police. But, two weeks later, on July 2, 2018, the council reconvened and voted to reinstate Mitchell as chief and place him on administrative leave with pay until further notice.

Mitchell stayed on administrative leave through the fall. Then, in November, the town sent Mitchell a notice that he was being considered for termination and had 10 days to request a hearing. Mitchell made such a request, and a hearing was held on December 3, 2018. At the

hearing, the council presented written complaints about Mitchell's performance as chief. These written complaints were all submitted to the council after Mitchell's original termination.

A week after the hearing, the council voted on whether to remove Mitchell as chief of police. The vote split two to two, with the result that Mitchell would not be terminated. On December 17, 2018, Mitchell resumed active work as chief, a position he holds to this day. However, he was never formally reappointed as chief. He instead holds his position as a 'holdover' official.

Throughout this process, Mitchell never missed a paycheck and he remained covered by his government provided health insurance. While he was out of a job from April 18 to July 2, 2018, he received paychecks that came out of his accrued leave time. He maintains that he should recover the leave time that was used to pay his salary during this period. He also asserts that the ordeal caused him reputational and emotional harm because councilmember Reeves told the press he was not doing his

job.  Additionally, he says he lost out on a job opportunity with a different municipality because of Reeves's comments to the press.  However, he never actually applied for that other job.  Finally, separate from his termination, he contends that the town owes him upwards of $100,000 in unpaid overtime from years past.

### III. Federal Claims

#### a.  *FLSA*

As stated, Mitchell asserts a FLSA claim against only Hayneville.  He argues that the town has not compensated him for thousands of hours of overtime pay.  The town concedes that it has not paid Mitchell this money but argues that it is entitled to summary judgment on the claim because he is simply not entitled to overtime pay. The court agrees.

The FLSA requires an employer to compensate a qualified employee at a rate of at least one and one-half times the employee's regular rate for hours worked in excess of 40 hours in a single work week.  *See* 29 U.S.C.

§ 207(a)(1).  So, if the employee worked 43 hours in one work week, he would be compensated at least one and one-half times his regular rate for three of those hours. *Id.*  Overtime pay is awarded to both qualified wageworkers and salaried workers.  But this rule, like most rules, has its exceptions and exemptions.  One such exemption, codified at 29 U.S.C. § 213(b)(20), is that public agencies that employ fewer "than 5 employees ... in law enforcement activities" during the work week do not have to comply with the overtime.

Mitchell admits that Hayneville employed fewer than five employees in law enforcement activities during all relevant workweeks and that his employment falls into the overtime exemption outlined in § 213(b)(20).  *See* Response in Opposition (Doc. 51) at 19.  He contends, however, that an unwritten exception to the exemption should apply.  He argues that the town "should be precluded from asserting [its] exemption because the town compensates overtime hours for all law enforcement officers except [him]."  *Id*.  Put differently, he

proposes that a public employer waives its rightful exemption to FLSA's overtime requirement if the employer voluntarily decides to pay any of its employees' overtime.

However, neither the plain language of the statute nor the implementing regulations state that the overtime exemption is waived if overtime has been voluntarily paid in the past. Moreover, outside of the plain, and dispositive, text of § 213(b)(20), there are good reasons to reject Mitchell's rule proposal. First, his rule is premised on the idea that he is being treated unfairly compared to his subordinates. However, his salary is nearly twice as much as the annual wage income of some of his co-workers who do receive overtime. That disparity would only increase if Hayneville were required to give Mitchell overtime. Second, if small police departments are understood to waive their exemption when they provide any of their employees with overtime, then those departments would be incentivized not to give overtime to anybody--hurting all employees. At bottom,

§ 213(b)(20) leaves it up to small public agencies to decide whether to award overtime to law enforcement employees; that discretion is not taken away when it is exercised.

Accordingly, summary judgment will be granted in favor of Hayneville on Mitchell's FLSA claim.

### b. *Procedural Due Process*

Mitchell also brings a procedural-due-process claim under 42 U.S.C. § 1983 against Hayneville, asserting that his removal from his post as chief of police on April 18, 2018, violated his constitutional right to due process because he was not afforded a pre-disciplinary hearing.

To survive summary judgment, Mitchell must create genuine disputes of fact as to three elements: (1) that he was deprived "of a constitutionally-protected liberty or property interest," (2) by the town, (3) through a "constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

The town argues (1) that he did not have a protected interest in his continued employment as chief of police because he is a holdover official, and (2) that, even if he had a protected interest, he was provided an adequate post-deprivation remedy.  It further argues (3) that his injury is *de minimis* and therefore does not state a viable deprivation.

Each of these arguments was addressed, and rejected, in the court's December 2020 opinion at the motion-to-dismiss stage: *Mitchell v. Town of Hayneville, Ala.*, 2020 WL 7480551 (M.D. Ala. 2020) (Thompson, J.). In that opinion, the court first concluded, based on Alabama law, that a "holdover official" like Mitchell has a right to retain his position until his successor is chosen, absent cause to fire him.  *Id.  See also* Ala. Code § 11-43-4 ("The clerk and such other officers elected by the council shall serve until their successor or successors are elected and qualified."); *City of Foley--Municipalities--Elections*, No. 1981-119, Ala. Op. Att'y Gen., 1900 WL 10711756, at *2 (Sept. 23, 1990)

13

(explaining that a holdover position is a matter of right which attaches to the officeholder "unless such holding over be expressly or impliedly prohibited.").

The court sees no reason now to depart from the reasoning, or the outcome, of this decision because the factual record after discovery affirmatively supports the relevant facts pleaded in the operative complaint, and the town has not provided, and the court has not found, any controlling or persuasive authority to the contrary.

Mitchell could, therefore, be removed in one of two ways.  If his removal was for cause, then he was entitled to a due-process hearing.  A holdover official, until replaced, maintains a "legitimate claim of entitlement" to his job, which may be deprived by cause with a preliminary hearing.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  *See also* Ala. Code § 11-43-160(a)(2) (provisions for termination of appointed city officials after for-cause hearing); §§ 11-43-230 to -231 (provisions for pre-disciplinary hearing prior to suspension or termination of certain city employees).  If

his removal was by succession (that is, appointment of a replacement), then no such hearing was required. Here, Mitchell was not removed by succession. He was terminated for cause.[1]

Because Mitchell was terminated for cause on April 18, 2018, he was entitled to notice and a hearing beforehand--a hearing that he did not receive. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *see supra* Ala. Code §§ 11-43-230 to -231.

The court's prior December 2020 opinion also addressed Hayneville's other arguments, concluding (1) that an adequate post-deprivation remedy did not absolve

---

1. Hayneville points to *Kanitra v. City of Greensboro,* 769 S.E.2d 911 (Ga. 2015). *Kanitra* does not warrant a different conclusion. There, the Georgia Supreme Court held "that the City Council had authority to appoint someone *to replace* [Kanitra} without regard to cause." *Id.* at 912 (emphasis added). Here, Mitchell was not replaced; he was terminated for cause.

Hayneville because a pre-deprivation hearing was feasible under the circumstances, *see McKinney v. Pate*, 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc) (explaining that post-deprivation remedies, like a state claim, satisfy due process when a pre-deprivation remedy was impossible or not feasible); *see also Barr v. Johnson,* 777 F. App'x 298, 303 (11th Cir. 2019) (explaining and applying *McKinney* to pre-deprivation violations); *Galbreath v. Hale Cnty., Ala. Comm'n,* 754 F. App'x 820, 827-28 (11th Cir. 2018) (same), and (2) that a procedural-due-process claim is viable even when, like here, the remedy may only be nominal damages, *see Carey v. Piphus*, 435 U.S. 247, 266 (1978).  The court still stands by its discussion of these arguments.  In short, the town's motion for summary judgment as to Mitchell's procedural-due-process claim will be denied.

However, Mitchell's prospective remedies on this claim are greatly limited.  First, he cannot recover back pay because he continued to receive a paycheck through his return to the job in July 2018.  He also cannot

recover compensatory damages for the loss of his health insurance because his health-care coverage ended only a day before it resumed again.

Second, Mitchell cannot pursue compensatory damages for emotional distress through his procedural-due-process claim because he has failed to produce sufficient evidence that he has sustained such injuries. A plaintiff's testimony, alone, can "support an award of compensatory damages for emotional distress based on a constitutional violation." *Akouri v. State of Fl. Dept. of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005). However, the plaintiff's testimony "must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages." *Id.* (quoting *Price v. Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). In short, the evidence must establish a "genuine injury." *Carey*, 435 U.S. at 264.

Admittedly, Mitchell has presented evidence for a factfinder to conclude that he has suffered a genuine emotional injury. However, based on his own testimony, that emotional harm was not the result of his termination. His emotional harm was the result of allegedly false statements made to the public by defendant Reeves. Affidavit of Kelvin Mitchell (Doc. 52-3) at 3 ("I was humiliated, upset, and embarrassed by these false allegations."). But Mitchell has not brought a defamation claim: he has brought a due-process claim. And for that claim, he has not presented any evidence that indicates that the alleged deprivation, that is, his termination, caused him emotional distress. Accordingly, he has failed to establish that a "genuine [emotional] injury" resulted from his termination, and therefore compensatory damages for emotional harm are not appropriate. *Carey*, 435 U.S. at 264.

Third, and finally, Mitchell cannot seek compensatory damages for the job opportunity he allegedly lost due to being terminated. He testified that prior

to his termination he was in employment conversations for a better-paying police chief job in Dallas County, Alabama but that these conversations ceased after he was terminated. However, the evidence shows that he never actually applied for the other job; nor has he presented evidence from Dallas County officials indicating that the conversations stopped because he was terminated as Hayneville chief, as opposed to some other reason, such as Dallas County's having found a more qualified candidate. Accordingly, Mitchell's arguments for compensatory damages based on this 'lost' job opportunity are built on speculation. And speculation alone is insufficient to place a fact in genuine dispute. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Therefore, Mitchell's procedural-due-process claim survives summary judgment, but only to the extent that he may pursue nominal damages and equitable relief in the form of credit for the leave hours the town expended to pay him while he was terminated.

### c.   First Amendment Retaliation

Mitchell claims that the town and councilmembers Pouncey, Reeves, McDonald, and Tyson-Bailey retaliated against him because of protected conduct, in violation of the First Amendment as enforced by 42 U.S.C. § 1983. He alleges that his support of certain political candidates motivated defendants to remove him as chief of police in 2018.

### 1. The Councilmembers

The councilmembers argue that qualified immunity bars his political-association retaliation claim, which is against them in only their individual capacities.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  To determine if qualified immunity applies here, the court engages in two distinct inquiries: (1) whether Mitchell's allegations "make out a violation of a constitutional right," and (2) whether "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."  *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The court will proceed to determine whether a violation was committed by each councilmember before deciding whether the right at issue was clearly established at the time of the alleged violation.  All said, the court concludes that only Pouncey is entitled to qualified immunity and summary judgment.  Mitchell's retaliation claims shall proceed against the town and the other individual defendants--albeit with only a few available remedies.

### i. Whether a Violation Occurred

"The First Amendment protects political association."  *Elrod v. Burns*, 427 U.S. 347, 357 (1976)

(cleaned up). To prevail on his First Amendment political-association claim, Mitchell must show that (1) he engaged in constitutionally protected political affiliation, and (2) "his protected conduct was a 'substantial or motivating factor'" in the decision to terminate him.[2] *Rodriguez v. City of Doral*, 863 F.3d 1343, 1350 (11th Cir. 2017) (quoting *Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1500 (11th Cir. 1985)). If this burden is met, defendants may escape liability only by showing that they "would have made the same employment decision, even had [Mitchell] never engaged in the protected conduct." *Id.* (citing *Mt. Healthy City*

---

2. Defendants argue that Mitchell was not terminated because he never missed out on a paycheck and retained his health insurance. This argument confuses the scope of Mitchell's potential relief with the reality that Mitchell was, indeed, terminated, even if he was subsequently put on administrative leave and did not lose out on a paycheck. If there is any confusion, the council's minutes say it all: "A motion was made ... that Chief Mitchell[] be terminated ... Motion unanimously carried." April 18, 2018 Meeting Minutes (Doc. 46-4) at 3. And "[o]f course, termination constitutes an adverse employment action." *Rodriguez v. City of Doral*, 863 F.3d 1343, 1350 (11th Cir. 2017) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1565–67 (11th Cir. 1994)).

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Defendants put forward arguments on all three steps.

To begin, the councilmembers argue that Mitchell has not shown that he engaged in constitutionally protected political affiliation because his role as chief of police falls under the political patronage exception outlined by the Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 518 (1980). In *Branti,* the Court stated that political affiliation is an impermissible reason for firing a government employee absent a showing that "party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518.

The councilmembers assert that Mitchell's role as the Hayneville chief of police is a position that requires political affiliation to be performed "effective[ly]." *Id.* This argument is belied by the councilmembers' own testimony. Each councilmember testified that political affiliation is not a consideration, let alone a requirement, for the effective

23

performance of the Hayneville chief of police. *See* Deposition of Justin Pouncey (Doc. 52-10) at 13–14; Deposition of Lula Tyson-Bailey (Doc. 52-22) at 6; Deposition of Sharon Reeves (Doc. 52-21) at 8; Deposition of Cynthia McDonald (Doc. 52-20) at 8. Accordingly, Mitchell does not fall into the political patronage exception, and, because Mitchell publicly supported certain political candidates (going as far to canvass for one of them) his political affiliation was unquestionably constitutionally protected. *See Branti*, 445 U.S. at 518.

However, that does not end the analysis. To prevail on his First Amendment political-association claim, Mitchell must also show that "his protected conduct was a 'substantial or motivating factor'" in the decision to terminate him. *Rodriguez*, 863 F.3d at 1350 (quoting *Holley*, 755 F.2d at 1500).

To establish that an adverse action was motivated by plaintiff's protected conduct, a plaintiff must present evidence that the decisionmakers were aware of the political association at the time of adverse action. *See*

*Smith v. City of Greensboro*, 647 Fed. App'x 976, 982 (11th Cir. 2016) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). And "if there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct" the plaintiff will be unable to establish causation even if the protected conduct and adverse action are temporally proximate. *Id.* (quoting *Brungart*, 231 F.3d 791 at 799).

Here, all four councilmembers testified that they were unaware of whom Mitchell supported in the 2016 election. However, Mitchell has presented sufficient evidence to rebut these assertions--at least for Reeves, McDonald, and Tyson-Bailey. First, Mitchell testified that he explicitly told Tyson-Bailey whom he planned to support in the election. Second, he testified that prior to the election he had a "storage room" meeting with Reeves and her husband. Deposition of Kelvin Mitchell (Doc. 52-2) at 51. During this meeting, according to Mitchell, Reeves's husband told Mitchell that Reeves,

McDonald, and Tyson-Bailey (but not Pouncey) had a plan to "change the Town of Hayneville" by replacing the then-mayor and his supporters, and that if Mitchell continued to stay aligned with the mayor's side, then "there are going to be some changes."[3] *Id.*at 51-52. Not only did she not disagree with her husband's recitation of her, McDonald, and Tyson-Bailey's plan to "get[] rid" of Mitchell if he stayed on the wrong political side, Reeves, according to Mitchell, validated her husband, saying, "Yeah. This is what *we're* going to do." *Id.* at 52 (emphasis added). Based on this testimony and viewing the facts in the light most favorable to Mitchell, a reasonable factfinder could determine that Reeves,

---

3. Defendants contend that this conversation cannot establish awareness because Mitchell "does not even mention his purported political support of a specific candidate." Reply Brief (Doc. 54) at 22. While this is true, a reasonable factfinder could read the testimony in its entirety and conclude, based on the context and implicit assertions, that Reeves, McDonald, and Tyson-Bailey all knew whom Mitchell supported. Further, because Mitchell maintained his political allegiances and was ultimately terminated as warned, Reeves's husband's prophecy come-to-life provides compelling circumstantial evidence that Tyson-Bailey, McDonald, and Reeves were aware of Mitchell's political association.

Tyson-Bailey, and McDonald were acting in concert and were aware that Mitchell supported their political opponents before they voted to remove him.

However, Mitchell has not presented sufficient evidence to rebut Pouncey's denial of knowledge about his political associations.  Again, Pouncey was not mentioned in the storage-room conversation and that evidence cannot attach to Pouncey.  Nevertheless, Mitchell attempts to rebut Pouncey's denial of knowledge about his political associations in two ways.  First, he argues that Hayneville is a small community, making it "difficult to believe that Defendants were unaware of who did or did not support them politically." Response in Opposition (Doc. 51) at 38.  But a person's political affiliation can be held privately, even in a small community, and the argument that community size, alone, can establish awareness of neighbors' political affiliation steps into the realm of inadmissible speculation. *See Cordoba*, 419 F.3d at 1181 ("Speculation does not create a genuine issue of fact.").  And second, Mitchell argues that

Pouncey was aware of his political affiliations because Pouncey filed a lawsuit against the former mayor; but an unrelated lawsuit is irrelevant to whether Pouncey had knowledge of whom Mitchell politically supported. Lacking evidence establishing his requisite awareness, no reasonable factfinder could find that Pouncey's vote was motivated by Mitchell's political affiliation. Summary judgment will therefore be granted for Pouncey on this claim.

Nonetheless, as discussed, there are genuine disputes of fact as to whether three of the four councilmembers--Reeves, Tyson-Bailey, and McDonald--were aware of Mitchell's political associations. And because Mitchell was terminated right after the 2016 election was resolved, he has created a genuine issue of fact as to whether his termination was motivated by his political affiliation. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1291 (11th Cir. 2000) (holding that a plaintiff's burden in showing the defendants were motivated by protected conduct is not a "heavy one"); *see also Thomas*

*v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that causation "can be met by showing close temporal proximity between the [protected conduct] and the adverse employment action.").

Because Mitchell has satisfied his requisite showings as to Reeves, Tyson-Bailey, and McDonald, the burden shifts to these defendants to show that they would have terminated Mitchell absent his political associations. *See Rodriguez*, 863 F.3d at 1350. For this burden, defendants have produced evidence indicating that they terminated Mitchell because they had been told about or personally observed Mitchell failing to perform his duties as chief of police. However, this evidence is not sufficient to put the question beyond genuine dispute.

While it may (or may very well not) be true that defendants believed Mitchell was not adequately performing as chief,[4] the evidence in the record, when

---

4.    Defendants claim that prior to the vote to terminate Mitchell they were told that Mitchell was not responding to 911 calls.  However, defendants did not investigate these alleged verbal complaints or inquire into these complaints with Mitchell himself.  Defendants

viewed in Mitchell's favor, is sufficient for a
reasonable factfinder to determine that Mitchell would
not have been terminated absent his political
associations. As already discussed, Mitchell testified
that Reeves's husband, in Reeves's presence, told
Mitchell that Reeves, McDonald, and Tyson-Bailey were all
a part of a plan to remove public employees that supported
their opponents. Indeed, Reeves's husband essentially
told Mitchell that they planned to retaliate against him
unless he stopped his political affiliations with other
candidates. But there is more. For over a month the

refused to tell Mitchell about these alleged complaints
for weeks after they terminated him and only acquired
documentation of any complaints against Mitchell months
after they terminated him. Once informed of these
complaints, post-termination, Mitchell presented
evidence indicating that the complaints against him were
baseless. Accordingly, the record does not
"indisputably" establish that defendants were "in fact
motivated, *at least in part*, by objectively valid
reasons" in terminating Mitchell. *Stanley*, 219 F.3d at
1296; *Cf. Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269,
1285 (11th Cir. 2008) (finding that it was beyond dispute
that officials had a valid reason to take an adverse
action against an employer where the officials relied on
an unrebutted neutral, official investigation and report
into the plaintiff's misconduct).

council refused to tell Mitchell why he was terminated, even though Mitchell repeatedly asked for an explanation under threat of suit, which could lead a factfinder to determine that defendants were then, and are now, masking their unconstitutional "behavior behind a complex web of *post hoc* rationalizations." *Holley*, 755 F.2d at 1505 (quoting *Peacock v. Duval*, 694 F.2d 644, 646–48 (9th Cir. 1982)). Additionally, Mitchell was terminated once the new council was elected--just like Reeves's husband suggested to Mitchell would happen if Mitchell supported the wrong candidate. Meanwhile, the complaints that supposedly supported the decision to fire Mitchell did not surface in writing until *after* he was terminated; and there is a genuine dispute as to whether those complaints were investigated. Considering all the evidence, whether defendants would have fired Mitchell regardless of his political affiliations "is a factual dispute that must be resolved at trial and is inappropriate for resolution on summary judgment." *Lewis v. Eufaula City Bd. of Educ.,*

922 F. Supp. 2d 1291, 1305 (M.D. Ala. 2012) (Thompson, J.).

Therefore, Mitchell has created genuine disputes of fact as to whether Reeves, Tyson-Bailey, and McDonald violated Mitchell's constitutional right to engage in political association protected by the First Amendment.

### ii. Whether the Right Was Clearly Established

The court now turns to the remaining qualified-immunity determination: Whether Reeves, Tyson-Bailey, and McDonald violated clearly established law when they voted to terminate Reeves. *See Pearson*, 555 U.S. at 231 (holding that qualified immunity cannot attach if an official, acting in his discretionary function, violated clearly established law). In addressing whether a legal right was clearly established, the overarching question before the court is whether "the state of the law ... gave [defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 740

(2002).  There are three recognized pathways for providing such notice and clearly establishing law: (1) factually indistinguishable caselaw from the Eleventh Circuit Court of Appeals or Supreme Court, (2) broad statements of legal principles that apply with "obvious clarity to the circumstances," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021).  So, was the law clearly established when defendants voted to terminate Mitchell?  The answer is yes.

It was clearly established at the time of Mitchell's termination that his termination could not be motivated by his political association.[5]  It has long been a feature

---

5.  Despite defendants' contrary protestations, it has long been clearly established that termination is the quintessential adverse-employment action--even if that termination is short lived and even if it resulted in minor economic damage.  *See Branti*, 445 U.S. at 513.  And here, it is undisputed that Mitchell was unequivocally terminated for a short time, *see* April 18, 2018 Meeting Minutes (Doc. 46-4) at 3, even though he was later put on administrative leave and was able to continue receiving pay by using saved leave hours.

33

of law as declared by the Supreme Court and the Eleventh Circuit that the government cannot fire its employees solely because of whom they politically support unless that political support is a requirement of their job.[6] *See Branti*, 445 U.S. at 514-16; *Mt. Healthy*, 429 U.S. at 287; *Elrod*, 427 U.S. at 357; *see also Rodriguez*, 863 F.3d at 1350 (holding that the government may not take adverse actions against a public employee "solely because of his political association or beliefs").

Defendants do not dispute this clearly established rule. Rather, they argue that they were not, in fact, motivated by Mitchell's political association when they fired him. Or, alternatively, they argue that they were, at least, motivated in part by lawful and unlawful

_____

6.  To the extent defendants assert that it was not clearly established that Mitchell's job as chief fell outside of the political patronage exception outlined in *Branti*, 445 U.S. at 513, that contention is without merit, because, as explained earlier, defendants, Mitchell's employers, all testified that political affiliation was an irrelevant consideration for the post. Deposition of Justin Pouncy (Doc. 52-10) at 13-14; Deposition of Lula-Tyson Bailey (Doc.52-22) at 6; Deposition of Sharon Reeves (Doc. 52-21) at 8; Deposition of Cynthia McDonald (Doc. 52-20) at 8.

considerations--that is, they acted with mixed motives. However, as explained above, Mitchell has placed both of those factual contentions in genuine dispute.

The Eleventh Circuit has held that the "presence of a jury issue about a defendant's improper intent does not necessarily preclude qualified immunity." *Stanley*, 219 F.3d at 1295. Put differently, even when a plaintiff has created genuine disputes of fact as to whether the defendant's protected conduct was a substantial motivating factor, that does not mean qualified immunity is unavailable. Rather, when the "facts assumed for summary judgment purposes ... show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." *Id.* That is, the defendant is entitled to qualified immunity if the record "indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations" and pre-existing

law does not dictate a result in plaintiff's favor.  *Id*. at 1296.

Here, however, the summary judgment record does not '*indisputably*' establish that defendants terminated Mitchell on a lawful basis.  Rather, a reasonable factfinder could conclude that there was "no mixed motive, just an unlawful [] one," meaning "qualified immunity could not apply."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1286 (11th Cir. 2008) (Edmonson, C.J., concurring).

If a factfinder determines that Mitchell's removal was motivated solely by his political affiliation, then Reeves, Tyson-Bailey, and McDonald violated clearly established law.  *See Rodriguez*, 863 F.3d at 1350.  If a factfinder determines that Mitchell's removal was motivated, at least in part, by permissible considerations (and pre-existing law did not dictate a result in his favor), then these individual defendants are entitled to qualified immunity.  *See Stanley*, 219 F.3d at 1296.  But based on the evidence in the record,

the court cannot say which of these factual narratives will bear out. *See Holley*, 755 F.2d at 1501 (holding that the First Amendment political-association causation determination is "a question of fact ... which generally must be resolved by the jury or judge sitting as factfinder."). Accordingly, genuine disputes of fact preclude Reeves, Tyson-Bailey, and McDonald from being granted qualified immunity.

One final point. The outcome here is different from the court's prior grant of qualified immunity for the individual defendants on Mitchell's procedural-due-process claim. *See Mitchell,* 2020 WL 7480551, at *7. In that analysis, the court determined the individual defendants were entitled to qualified immunity because, despite finding a constitutional violation, it was not clearly established that a holdover official like Mitchell was not an at-will type of public employee that could be fired without process. *Id.* That analysis has no weight here because it has been clearly established that even an at-will public employee may not

37

be terminated for engaging in conduct protected by the First Amendment.  "Although at-will Government employees may be fired with or without reason, they may not be fired for exercising their constitutional rights." *McMullen v. Carson*, 754 F.2d 936, 938 (11th Cir. 1985) (citing *Branti*, 445 U.S. at 514–16); *Mt. Healthy*, 429 U.S. at 283–84 ("Even though he could have been discharged for no reason whatever ... he may nonetheless establish a claim ... if the decision ... was made by reason of his exercise of constitutionally protected First Amendment freedoms.")

Accordingly, McDonald, Reeves, and Tyson-Bailey are not entitled to qualified immunity or summary judgment on Mitchell's First Amendment retaliation claim.  The claim shall proceed against all individual defendants, except Pouncey, who is entitled to qualified immunity.


### 2. Hayneville

Because Mitchell has shown that the majority of the councilmembers voted to remove him in violation of the

38

First Amendment, he may impute those councilmembers'
improper motives to Hayneville. *See Mason v. Vill. of
El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001) (holding
that the improper motive of a majority of council voters
can create municipal liability). Accordingly, Mitchell
has a viable First Amendment political-association claim
against the town.[7]

### 3. Prospective Remedies

As with his procedural-due-process claim, Mitchell
cannot pursue compensatory damages for his First
Amendment retaliation claim. He may, though, pursue
punitive damages under this claim against McDonald,
Reeves, and Tyson-Bailey in their individual capacities.
A jury may assess punitive damages in an action under
§ 1983 if it determines the defendants' actions were
motivated "by evil motive or intent" or when the
defendants' actions "involve[] reckless or callous

---

7. Unlike the individual defendants, qualified
immunity is not available to municipal entities, like
Hayneville.

indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, Mitchell has presented evidence that Reeves, McDonald, and Tyson-Bailey, working in concert, terminated Mitchell because he refused to support their preferred politic candidates (themselves). A reasonable juror could conclude that such actions, if true, constituted "callous indifference" to Mitchell's First Amendment right. *Id.*

Granted, the prospective punitive damages may be limited given the lack of compensatory damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) (holding that the ratio between the harm suffered by the plaintiff and the punitive damages award is one factor to consider when evaluating whether a punitive award is constitutional). However, while compensatory damages play a role in the scope of punitive damages, compensatory damages are not necessary for a jury to award punitive damages. *See Carey*, 435 U.S. at 264 n.22 (citing a case holding that nominal damages can "support an award of punitive damages"); *see also Sepulveda v.*

*Burnside,* 432 F. App'x 860, 866 (11th Cir. 2011) (collecting cases where punitives were awarded with only one dollar in damages). At bottom, when a plaintiff can establish that defendants acted maliciously or recklessly, "[w]hether to award punitives is left for the jury, which may or may not make such an award." *Wright v. Sheppard*, 919 F.2d 665, 672 (11th 1990).

Punitive damages, however, are not available against the town itself. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). But like in the procedural-due-process context, equitable relief is viable against Hayneville as to Mitchell's retaliation claim.

Accordingly, this claim will proceed against Hayneville and against Reeves, McDonald, and Tyson-Bailey in their individual capacities. As to Hayneville, Mitchell may seek equitable relief and nominal damages. As to the three remaining individual defendants, he may seek nominal damages and punitive damages.

41

## IV. State Claims

Because Mitchell has abandoned his state claim for breach of contract against Hayneville, *see* Response in Opposition (Doc. 51) at 1 n.1, summary judgment will be granted on that claim.

Mitchell also brings a state 'wrongful-termination' claim against Hayneville.  He alleges he was wrongfully terminated under Alabama law when he was fired as Hayneville chief of police without a pre-disciplinary hearing.  For this claim, the town advances two merits arguments and several arguments about Mitchell's scope of relief.  The court will first briefly address the merits arguments.

Hayneville argues that Mitchell cannot bring a wrongful-termination claim because (1) his term of office had expired, and (2) because he was not terminated "as envisioned by the statute."  Motion for Summary Judgment (Doc. 45) at 41.  Neither argument is availing.

Section 11-43-230 of the Code of Alabama requires municipalities to provide a pre-disciplinary hearing to

**42**

law enforcement officers who are being terminated for cause.  A "law enforcement officer," as defined by Alabama Code § 11-43-231, does not include "any person whose term of office has expired."  Therefore, according to the town, Mitchell was not entitled to a hearing because his term of office expired in 2016--two years before his termination.  This argument paints an incomplete picture.

Under Alabama law, Mitchell was entitled to a pre-disciplinary hearing because even though his official term of office had expired, his term of office as a holdover official was nonetheless running.  Under Alabama law, for towns like Hayneville with a population of fewer than 6,000 people, "The clerk and such other officers elected by the council shall serve until their successor or successors are elected and qualified."  Ala. Code § 11-43-4.  Until such succession, the lapsed official becomes a "hold over" official, which is a position held as a matter of right.  *See City of Foley - Municipalities - Elections*, No. 1981-119, Ala. Op. Att'y Gen., 1990 WL

10711756, at *2 (Sept. 23, 1990).  Therefore, Mitchell's term of office as a holdover official had not expired.

Hayneville's second contention that Mitchell was not terminated as "envisioned" by § 11-43-230 is more easily resolved.  The town once again argues that Mitchell was not terminated because he ultimately never lost out on a paycheck.  To support this argument, the town does not cite Alabama law but instead cites a handpicked definition from a single dictionary.  However, the court need not delve into the weeds of legal dictionaries because the Hayneville town council explicitly voted to "terminate" Mitchell, and Mitchell was terminated, albeit for a short time.  April 18, 2018, Meeting Minutes (Doc. 46-4) at 3.  Accordingly, Mitchell was terminated as envisioned by § 11-43-230, and he falls under that statute's protection from being fired without a pre-disciplinary hearing.

Merits aside, the court now turns to Hayneville's arguments concerning Mitchell's scope of relief for his wrongful-termination claim.  Mitchell seeks equitable

relief, nominal damages, and compensatory damages for this claim. Response in Opposition (Doc. 51) at 1. However, as discussed in this court's prior opinion, compensatory damages for back pay are not available to him because he was paid in full throughout the three-month long duration of his termination and his health-insurance never lapsed. *See Mitchell,* 2020 WL 7480551, at *3. Nonetheless, Mitchell still seeks nominal damages and equitable relief for his wrongful-termination claim. Equitable relief is available, but nominal damages are not.

As defendants reiterate, Alabama Code § 11-47-23 requires that all claims against municipalities for "damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." Ala. Code § 11-47-23. Hayneville argues that Mitchell failed to provide timely notice of his wrongful-termination claim and therefore cannot pursue any monetary remedies, nominal or otherwise. The town is correct.

Mitchell brought this suit over six months after his wrongful-termination claim accrued.  Therefore, his suit itself failed to timely "present[]" his wrongful-termination claim.  Ala. Code § 11-47-23. Nonetheless, he argues that he did timely present his claim in two other ways.  First, he asserts that he presented an 'intent to sue' letter to the council two months after he was removed as chief of police.  Second, he gave an 'intent to sue' letter to the town attorney, who forwarded that letter to the Alabama Municipal Insurance Company.  Through these two letters, according to Mitchell, the town was put on statutory notice of his wrongful termination claim.

But here's the rub.  Neither of these letters mention a wrongful-termination claim, nor were they given to the, the town clerk, as required by § 11-47-23.  While the letters may have given Hayneville actual notice that Mitchell had issues with his termination and that he intended to sue, the letters did not provide the "statutorily required notice" to the town clerk that he

would bring a wrongful termination suit.  *Cobb v. Aponte*,
2010 WL 2609279, at \*2 (M.D. Ala. June 28, 2010) (Coody,
M.J.) ("Actual notice of a claim does not replace the
statutorily required notice.").  This failure is
especially true here because Mitchell's letter to the
town council, the only letter Mitchell himself sent to
town representatives, does not mention his termination.
It mentions only his dispute over unpaid income and
overtime.  Exhibit 13 (Doc. 52-13) at 2; *see generally*
*Large v. City of Birmingham*, 547 So. 2d 457, 458 (Ala.
1989) ("Mere knowledge of the incident resulting in
injury does not satisfy the objectives of the notice-of-
claim statute.").  Mitchell, therefore, failed to comply
in a timely manner with the notice requirement, and his
wrongful-termination claim, to the extent it seeks
monetary damages, nominal or otherwise, is time-barred
by § 11-47-23.

However, Alabama Code § 11-47-23 presents no barrier
to Mitchell's wrongful-termination claim to the extent
that it seeks equitable relief.  And because Mitchell's

47

wrongful-termination claim is otherwise viable on the merits, Hayneville's motion for summary judgment on this claim will be denied.  Accordingly, in terms of remedies, Mitchell's sole avenue for relief under his wrongful-termination claim is an equitable order requiring Hayneville to credit him with the leave hours that were used to pay him while he was terminated from April 18, 2018, to July 2, 2018.

**\*\*\***

In sum, defendants' motion for summary judgment will be granted in part and denied in part.  The motion will be granted as to Mitchell's FLSA overtime claim against Hayneville, his state breach-of-contract claim against the town, and his First Amendment retaliation claim to the extent it is against Pouncey.

The motion will be denied as to his procedural-due-process claim against the town for nominal damages and equitable relief; his First Amendment

retaliation claim against the town for nominal damages and equitable relief, and against Reeves, McDonald, and Tyson-Bailey for nominal and punitive damages; and his wrongful-termination claim against the town for equitable relief.  The motion will be granted in favor of defendants in all other respects (including limitations on relief) as to these claims.

A judgment consistent with this opinion will be entered separately.

DONE, this the 6th day of February 2023.

  /s/ Myron H. Thompson  
UNITED STATES DISTRICT JUDGE